[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Plaintiff-appellant, James E. Russell, appeals from a judgment of the Montgomery County Common Pleas Court granting a directed verdict in favor of defendants-appellees, Reliable Mechanical, Inc. and James Boss, on the question of punitive damages. We find that Russell failed to present sufficient evidence that Reliable and Boss acted with malice. Therefore, the trial court did not err in granting a directed verdict on punitive damages. Accordingly, we affirm.
Russell filed suit against Reliable and Boss after a construction site accident in which Russell suffered a severe head injury. The accident occurred on October 11, 1995, at Wright Patterson Air Force Base. Reliable had been hired as the general contractor for a construction project on the base. Boss was a superintendent working at the site that day for Reliable. Russell was working that day as a welder for A M Piping, a subcontractor hired by Reliable.
Sometime after 4:30 p.m, shortly before the end of the working day, Boss drove his company pick-up truck into an area close to where Russell was working. In the truck with Boss was a co-worker, a Mr. King. Boss began to back his truck up to collect some concrete samples that had been taken earlier in the day. Before he backed up, however, he honked his horn three times to attract Russell's attention. Russell was working with a welding machine nearby and had his welding hood pulled down. There was conflicting evidence as to whether Russell responded to the car-horn signals.
Between Boss's truck and Russell's welding machine were three forty-two-foot lengths of joined pipe. These pipes were raised on jack-stands several feet off the ground. Each pipe had two jack-stands to support it at each end. The raised pipes were laid out in three parallel lines between the truck, as it began to back up, and Russell's work area. As Boss backed up to the concrete samples, the passenger-side of the rear bumper struck one end of the pipe furthest from Russell. That event began a cascade causing all of the jack-stands and the suspended pipes to fall toward Russell. When Russell fell to the ground, one of the pipes struck him in the head, causing him serious injuries.
Trial of the case was held before a jury on July 27, 1998. After the plaintiff presented his case, the defendants requested a directed verdict on the question of punitive damages. The trial court found that the plaintiff had failed to put on sufficient proof from which a jury could find, by clear and convincing evidence, conduct warranting punitive damages. Consequently, the court granted the motion for a directed verdict.
After both sides were presented, the jury found Reliable and Boss partially negligent. They also found Russell comparatively negligent for fifty per cent of his damages. Thus, as the jury's found Russell had suffered $25,000 in damages, he received an award of $12,500. Russell now appeals from the court's decision to grant the defendants a directed verdict on punitive damages.
Russell raises a single assignment of error on appeal. He asserts that
 The trial court committed reversible error in granting a directed verdict in favor of Defendants-Appellees on punitive damages and abused its discretion in failing to instruct the jury on punitive damages.
 In support of this assignment of error, Russell argues that a factual question existed as to whether Boss acted with the malice that would support a punitive damage award. Russell notes that, before the accident, Boss saw that he was particularly vulnerable because he was working alone with a noisy machine and had a welding hood on. Russell also notes that Boss backed his truck toward a welding site without a spotter and without an adequate line of sight. These facts, Russell argues, evidenced a conscious disregard for safety on Boss's part.
In Ohio, punitive damages may be awarded upon a showing of fraud, malice or insult. Preston v. Murty (1987), 32 Ohio St.3d 334,334 (citing Roberts v. Mason (1859), 10 Ohio St. 277, paragraph one of the syllabus). Russell does not claim punitive damages by reason of fraud or insult. He claims, instead, the existence of actual malice. The concept of actual malice is not limited to those cases in which the defendant's conduct was prompted by hatred, ill will or a spirit of revenge. Id. at 336. It may also arise where the defendant showed a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. Id.; see also Cabe v.Lunich (1994), 70 Ohio St.3d 598, paragraph one of the syllabus. Thus, Russell's argument for punitive damages turns on whether Boss's behavior showed such a conscious disregard.
Where actual malice is at issue and there is no evidence of ill will, the Supreme Court has instructed trial courts to review the evidence before submitting the issue of punitive damages to the jury. Preston, 32 Ohio St. at 336. For the question to reach a jury, sufficient evidence must support both prongs of the test, in that reasonable minds must be able to find (1) that the defendant was aware that his or her act had a great probability of causing substantial harm and (2) that he consciously disregarded the injured party's rights or safety. Id.
Russell's case for punitive damages fails on both prongs of the test. What separates this case from a typical case of negligence involving a vehicle driving in reverse is the presence of the suspended pipes. In most other such cases, there is no great probability of substantial harm. If the vehicle strikes something because it is improperly operated or because the driver does not take sufficient care, the resulting harm is usually some minor property damage. The only threat of greater harm in this case, which then manifested itself, arose because of these suspended pipes.
Reasonable jurors could not have found that Boss was aware of a great probability of causing substantial harm because of these suspended pipes. For that to be true, Boss would have had to have been aware that, when he struck the first suspended pipe, it would fall into the next one, inevitably creating a "domino effect" that would eventually harm Russell, who was standing dozens of feet away. In finding Boss negligent, the jury concluded that this result was foreseeable. But, "[m]ere foreseeability cannot be equated with great probability." Calmes v. Goodyear Tire RubberCo. (1991), 61 Ohio St.3d 470, paragraph two of the syllabus. For punitive damages to follow, there must be something more. The circumstances of this accident were unusual for anyone to have judged beforehand that there was a high probability of substantial harm looming if Boss mishandled his vehicle. See id. at 474.
By the same token, Boss did not show a conscious disregard for the safety of others with his conduct. Certainly, the evidence revealed that he did not use any particular caution. As Russell emphasizes, Boss did not use a spotter to help him back up to the concrete samples. Nevertheless, the circumstances were not such that the need for particular caution would have been obvious. "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required." Preston, 32 Ohio St.3d at 335. The trial record does not support any notion that Boss's conduct was worse than merely negligent.
Russell relies on Cabe v. Lunich (1994), 70 Ohio St.3d 598, for the proposition that punitive damages may be awarded in a case of negligent driving if the driver's conduct constituted "the kind of reckless, outrageous behavior justifying a jury to conclude that the defendant possessed a wilful indifference to the rights and safety of others." Id. at 602. The contrasts between that case and this one, however, show precisely why the question of punitive damages could not have been submitted to the jury in this case. In Cabe, the evidence indicated that the defendant driver had consumed alcohol in excess of the legal limit. Id. at 603. Nothing in this case suggests anything approaching that level of recklessness.
"If all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party." Helmick v.Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71, 74-75, quoting O'Day v. Webb (1972), 29 Ohio St.2d 215, 220. We conclude that the trial court did not err in directing the verdict against a finding of punitive damages. Accordingly, we overrule appellant's sole assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
WOLFF, J., and FAIN, J., concur.