**In re Sundi Renee CORNER, Debtor.**

**Telhio Credit Union, Inc., Plaintiff,**

**v.**

**Sundi Renee Corner, Defendant.**

**Bankruptcy No. 02–56710.**
**Adversary No. 02–02409.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

May 12, 2003.

Geoffrey J. Peters, Columbus, OH, for Plaintiff.

### *OPINION AND ORDER ON PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT*

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the complaint of plaintiff Telhio Credit Union, Inc. ("Telhio") for a judgment against defendant Sundi Renee Corner ("the Debtor") in the amount of $18,600.55 and a

determination that this debt is nondischargeable pursuant to 11 U.S.C. § 523(2)(A) and (6). On February 18, 2003, the Court orally denied Telhio's motion for summary judgment and the complaint proceeded to trial.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(I).

The Debtor at one time had a savings account with Telhio and had been a customer of Telhio for many years. The Debtor, for each of her pay periods had $50.00 directly deposited into this account. On or about August 1, 2002, she deposited a check for $18,600.55 into this savings account purportedly drawn on a checking account owned by Coverall North America, Inc. at LaSalle National Bank. Between August 17, 2002, and August 30, 2000, the Debtor made five cash withdrawals from her saving account, totaling $18,550.00.

The Debtor testified that she received the check from an insurance claim arising from an alleged accident in which the side of her car was extensively damaged. A claims adjuster purportedly came to look at the car and estimated $5,000.00 as the cost of repair. When the Debtor received the check for $18,550.00 instead of $5,000.00, she claims to have contacted the insurance company to make the company aware of its mistake. The company allegedly told her to go ahead and deposit the check and to return the excess funds.

The Debtor testified that her first three withdrawals from the savings account were to reimburse the insurance company. On three separate occasions, someone from the insurance company came to the Debtor's place of employment to accept the cash payments. The final two withdrawals of $1,500.00 and $3,550.00 were supposedly

her rightful settlement proceeds which she used to pay bills. She did not use the funds to repair her car and does not know its present whereabouts. She had taken the car to AAM Transmissions when the car developed transmission problems. AAM did not fix the car and later had it towed away. The Debtor never saw the car again.

The Court found the Debtor's story to be untruthful. That an insurance company would tell a claimant to deposit a check for an improper amount and then collect the excess funds from the claimant in three separate cash installments at her place of employment is beyond belief.

Apart from the Debtor's false testimony, there was no evidence that she was even involved in an automobile accident. She did not report the accident to the proper authorities despite being under a legal obligation to do so. Also, the service manager at C & M Towing, which towed the Debtor's car to AAM Transmission, testified that except for three bullet holes, the exterior of the car was in fair condition.

Furthermore, the regional director of Coverall North America testified that her employer is a commercial cleaning company, not an insurer. Although Coverall did maintain a checking account at LaSalle National Bank, any checks issued from this account would have gone to franchisees of the company. LaSalle National Bank never paid the amount of the check and, as a result, Telhio suffered a loss of $18,600.55.

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt for money to the extent obtained by false pretenses, a false representation, or actual fraud. In order to prevail on a nondischargeability claim for false representation, a creditor must prove the following elements by a preponderance of the

evidence: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.), *cert. denied*, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998).

■ The Court finds that the deposit of the $18,600.55 check by the Debtor constituted a material misrepresentation to Telhio that the check was legitimate. The Court further finds that the Debtor knew the check was counterfeit and that by presenting the check for deposit, she intended to deceive Telhio. Telhio relied on the false representation and its reliance was justifiable given the lengthy customer relationship it had with the Debtor. Such reliance enabled the Debtor to make the cash withdrawals because, but for the proceeds from the check, the only deposits into the savings account consisted of $50 from each of the Debtor's paychecks. When the LaSalle National Bank refused payment on the counterfeit check, Telhio lost $18,600.55.

■ Based on these findings, Telhio has prevailed on its nondischargeability claim for false representation. Alternatively, the Court determines that the Debtor's scheme to deprive Telhio of the $18,600.55 constituted actual fraud which is conceptually broader than misrepresentation. *See Mellon Bank v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001).

■ Section 523(a)(6) excepts from discharge any debt for willful and malicious injury. The United States Supreme Court unanimously held that this exception applies only to acts committed with the actual intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Since *Geiger*, the Sixth Circuit has interpreted § 523(a)(6) by using a strictly subjective approach. *S.L. Pierce Agency, Inc. v. Painter (In re Painter)*, 285 B.R. 669, 674 (Bankr. S.D.Ohio 2002). Unless the Debtor wished to cause the consequences of her act or believed that these consequences were substantially certain to occur as the result of her act, she has not committed a willful and malicious injury for purposes of § 523(a)(6). *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).

■ Court opines that the evidence amply supports a finding that by depositing the counterfeit check the Debtor wished to deprive Telhio of $18,600.55. Therefore, she has committed a willful and malicious injury under § 523(a)(6).

For the foregoing reasons, judgment shall be entered in favor of Telhio and against the Debtor for the sum of $18,600.55. The Court determines that this judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (6).

**IT IS SO ORDERED.**